NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2288
_____

WENDY WILLARD,
Appellant

v.

THE PENNSYLVANIA SOCIETY FOR THE PREVENTION
OF CRUELTY TO ANIMALS; GEORGE BENGAL, in his official
and individual capacity; TARA LOLLER, in her official and individual capacity
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 2-11-cv-04543
(Honorable William H. Yohn)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 4, 2013

Before:  SCIRICA, JORDAN, and ROTH, *Circuit Judges*.

(Filed: May 28, 2013)

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

# I.

Plaintiff, Wendy Willard, owned twenty-three dogs, two of which lived in her home while the other twenty-one dogs lived in a barn approximately 200 feet from her home. On July 21, 2009, defendant Tara Loller, a humane officer for the Pennsylvania Society for the Prevention of Cruelty to Animals (PSPCA),[1] left her business card at plaintiff's home in response to noise complaints from an unknown source. Loller returned on July 27 with PSPCA officer Leonard Knox, and two Pennsylvania dog wardens of the Bureau of Dog Law Enforcement (BDLE). The officers and dog wardens observed plaintiff cleaning a 100-foot run outside of the barn. Loller swore out an affidavit stating she observed plaintiff removing "large amounts of fecal material from the outdoor kennel area. A strong odor of feces was also observed." Based on this affidavit, a Magistrate Judge issued a facially-valid warrant to the PSPCA officers to search plaintiff's property, and to seize any evidence of animal cruelty violations. The BDLE dog wardens also obtained a facially-valid warrant.

Later that day, Loller, Knox, PSPCA officer George Bengal, the dog wardens and two Philadelphia police officers executed the search warrants on plaintiff's property. After searching the barn, Loller accused plaintiff of violating the Philadelphia law limiting twelve animals to residences not licensed to operate as a kennel, and said she would seize eleven of the dogs to bring plaintiff into compliance. Plaintiff avers she was then coerced into signing surrender agreements for eleven dogs.

On August 10, 2009, plaintiff was cited for twenty-two violations of animal cruelty for deprivation of clean and sanitary shelter and deprivation of veterinary care. Plaintiff was also cited for two animal noise code violations which were dismissed. The seized dogs had untreated eye conditions, untreated external parasites, and one had untreated Lyme disease. In her appellate brief, plaintiff asserts the PSPCA adopted out the dogs in January 2011.[2] Also argued in her brief, but not alleged in the complaint, plaintiff says she moved for the return of her dogs on December 4, 2009, during her criminal prosecution for animal cruelty. Plaintiff does not provide the result of that motion or say whether she received a hearing on it. Plaintiff argues the criminal proceeding did not conclude until July 2011.[3]

State court records show plaintiff's criminal prosecution for all twenty-two citations concluded October 5, 2010, after plaintiff complied with a consent order. Neither party has provided a copy of this consent order. State court dockets show entry of plaintiff's omnibus motion seeking to suppress all evidence, dismiss all claims, and return her dogs. The record also shows several hearings were scheduled in the criminal case between December 2008 and October 2010.

---

[1] The PSPCA is charged with enforcing Pennsylvania's animal cruelty laws, and is a state actor when functioning in that capacity. 18 Pa. Cons. Stat. Ann. § 5511. The PSPCA and two of its humane officers, George Bengal and Tara Loller, are the defendants.
[2] One dog was euthanized three days after it was taken into PSPCA custody due to complications from a surgical procedure.
[3] This fact was argued in plaintiff's appellate brief, but not alleged in her complaint. There is no evidence the criminal prosecution continued beyond October 5, 2010 when the state court docket showed the criminal complaint was withdrawn.

## II.

Plaintiff brings claims under 42 U.S.C. § 1983 for unconstitutional search and seizure, deprivation of procedural due process and substantive due process, a *Monell* claim for inadequate training and supervision, and seeks a declaratory judgment her constitutional rights were violated. The district court granted defendants' motion to dismiss for failure to state a claim on all claims.[4]

## III.[5]

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

---

[4] The declaratory judgment claim requested identical relief to the other claims. The District Court properly dismissed plaintiff's substantive due process claim because it sought to redress the same harm alleged in her procedural due process claim, and was barred by the "more-specific-provision" rule. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010). The District Court properly dismissed the *Monell* claim because plaintiff did not plead any PSPCA policy, custom or practice that led to the alleged constitutional violations, and there is no respondeat superior liability in § 1983 actions. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

[5] We have jurisdiction over this appeal under 28 U.S.C. § 1291. We review a district court's order granting defendant's motion to dismiss de novo. *McMullen v. Maple Shade Twp.*, 643 F.3d 96, 98 (3d Cir. 2011). The district court's refusal to permit leave to amend is reviewed for abuse of discretion. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163 (3d Cir. 2010) *cert. denied*, 131 S. Ct. 1798 (U.S. 2011).

cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted).

## A.

The Fourth Amendment protects against unreasonable searches and seizures, and a warrant supported by probable cause is typically required to search a home. *Brighton City v. Stuart*, 547 U.S. 389, 403 (2006). The District Court held the search and seizure were constitutional, even if the PSPCA warrant was invalid, because defendants were assisting in the BDLE warrant execution. Plaintiff did not challenge the validity of the BDLE warrant. Instead, plaintiff argues defendants cannot rely on the BDLE warrant because of the "stalking horse" doctrine.

The Eighth Circuit held police cannot conduct an investigative search based on a parole officer's valid search warrant for parole violations "when it is nothing more than a ruse for a police investigation." *United States v. McFarland*, 116 F.3d 316, 318 (8th Cir. 1997). We rejected the "stalking horse" theory in *United States v. Williams*, finding "the Supreme Court's more recent teaching in *Knights* precludes the viability of 'stalking horse' claims in this context. 'Stalking horse' claims are necessarily premised on some notion of impermissible purpose, but *Knights* found that such inquiries into the purpose underlying a probationary search are themselves impermissible." 417 F.3d 373, 377 (3d Cir. 2005) (citing *United States v. Knights*, 534 U.S. 112, 122 (2001)). Accordingly, where the search was conducted pursuant to a valid warrant, there is no Fourth Amendment violation. *Id.*

Plaintiff contends, despite *Williams*, the "stalking horse" theory is viable in contexts outside parole searches. Before *Williams*, we found the central stalking horse "'question is whether the parole officer used her authority to help the police evade the fourth amendment's warrant requirement.'" *Shea v. Smith*, 966 F.2d 127, 132 (3d Cir. 1992) (quoting *United States v. Harper*, 928 F.2d 894, 897 (9th Cir. 1991) *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012)). Evidence of collaboration between police and parole officers "is certainly not enough to invalidate a parole search. Indeed, such collaboration is expected given the similar duties of parole officers and police officers." *Williams*, 417 F.3d at 377.

In *Williams* we rejected the "stalking horse" theory in light of Supreme Court precedent. Even if we found the theory persists in other contexts, plaintiff's allegations do not support an illegal search under the "stalking horse" theory because there is no allegation of improper collusion to evade the Fourth Amendment. Furthermore, it is implausible defendants used the BDLE warrant as a ruse to evade the Fourth Amendment because they already had a facially-valid warrant to search plaintiff's property and seize evidence. Accordingly, even if the PSPCA warrant lacked probable cause, defendants were legitimately on plaintiff's property to execute the BDLE's warrant.

**B.**

"In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("If there is a process on the books that appears to provide due process, the

6

plaintiff cannot skip that process and use the federal courts as a means to get back what he wants."). "[A] state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body." *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 597 (3d Cir. 1995).

In *Parratt v. Taylor*, the Supreme Court held the process available in a state tort claim for conversion was adequate to remedy plaintiff's property deprivation. 451 U.S. 527, 543 (1981). Accordingly, he could not state a § 1983 claim for due process violations, because he failed to avail himself of the process available. *Id.*; *see also Hudson v. Palmer*, 468 U.S. 517, 534-65 (1984) (finding the "several common-law remedies available to respondent would have provided adequate compensation for his property loss" even though he alleged the property was unique and had sentimental value that could not be compensated). In *Revell*, we found no due process violation, because the plaintiff failed to bring a state law tort claim or move for return of his property during his criminal proceeding. *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 139 (3d Cir. 2010).

Here, plaintiff did not avail herself of Pennsylvania Rule of Criminal Procedure 588 or bring a tort claim for return of the dogs. Instead, she contends that a Rule 588 motion for return of her property would have been futile, because the PSPCA adopted out the dogs in January 2011, and she could not have secured their return until after the

7

criminal trial concluded.[6]  But plaintiff says she moved for return of the dogs on December 4, 2009, and the dogs were not adopted until January 2011, leaving a gap of more than 18 months before the dogs were permanently dispossessed.  This does not mean that the procedures were patently inadequate.  Moreover, plaintiff did not bring a tort claim for return of the dogs at any time, and does not argue the available tort procedures are inadequate.[7]  Since plaintiff's complaint failed to allege she availed herself of Rule 588 or state tort law or that the available procedures were inadequate, the complaint does not state a claim for relief.

## C.

When "a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).  But, plaintiff contends she should have been granted leave to amend because the District Court dismissed her claim for her failure to plead facts about the December 5 motion in her criminal case.  Plaintiff does not assert she could plead additional facts showing she did not receive a hearing on the December motion in state court.  Furthermore, as discussed above, plaintiff failed to avail herself of any state tort remedies available, so she cannot state a claim for deprivation of

---

[6] Plaintiff did not allege any of the procedural facts she now argues in her appellate brief. The complaint merely states she was denied any pre-deprivation or post-deprivation procedure, which is conclusory and insufficient.  Even if plaintiff amended her complaint to include her omnibus motion to the state court and the date her dogs were adopted, she still could not state claim for deprivation of due process.

[7] Although a beloved family pet is not replaceable, the Supreme Court rejected that the sentimental value of unique property rendered state tort law inadequate process in *Hudson*, 468 U.S. at 533.

8

procedural due process even if she pled the facts of her December motion in an amended complaint.   Accordingly, amendment would be futile.

## IV

For the forgoing reasons the District Court order granting defendants' motion to dismiss is affirmed.