# United States Court of Appeals
## For the First Circuit

No. 00-1711

UNITED STATES OF AMERICA,

Appellee,

v.

PEDRO DE JESUS MATEO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. George A. O'Toole, Jr.,* U.S. District Judge]

Before

Boudin, Chief Judge,

Lipez and Howard, Circuit Judges.

Raymond Sanchez Maceira for appellant.
Thomas F. Klumper, Assistant United States Attorney, with whom
H.S. Garcia, United States Attorney, and Sonia I. Torres-Pabón,
Assistant United States Attorney, were on brief, for appellee.

June 24, 2004

*Of the District of Massachusetts, sitting by designation.

**HOWARD**, <u>Circuit Judge</u>.  Pedro De Jesus Mateo appeals his conviction for conspiring to possess narcotics with the intent to distribute and the resulting sentence imposed.  We affirm the judgment.

## I. Background

In the late 1980's, De Jesus befriended Orlando Rosa Rodriguez in Ponce, Puerto Rico.  In the beginning of 1990, Rosa began a drug trafficking organization operating in the Belgica Ward of Ponce.  During the fall of 1990, Rosa expanded the enterprise and moved it to the Portugues Public Housing Project in Ponce.  By the end of 1990, De Jesus was working for Rosa, processing heroin and cocaine and helping procure additional drug supply.  In early 1992, Rosa gave De Jesus control of a marijuana "drug point" in the Portugues Housing Project.

In 1995, Rosa was incarcerated for drug offenses but continued to operate the enterprise from prison.  Rosa left two associates in charge of the operation.  These associates were delinquent in collecting money, so Rosa replaced them with his sister and De Jesus.  In this capacity, De Jesus collected delinquent debts, processed heroin, and operated the heroin "drug point."  For his services, Rosa paid De Jesus $200 per week.  De Jesus eventually withdrew from the organization in the fall of 1997.

On these facts, a jury convicted De Jesus of participating in a conspiracy to possess cocaine and heroin with the intent to distribute operating in Ponce from 1990 through the fall of 1997.  See 21 U.S.C. §§ 841(a)(1) & 846.  The district court sentenced De Jesus to life in prison because this was his third conviction for a drug-related felony.  See 21 U.S.C. § 841(b)(1)(A).

## II. Discussion

De Jesus raises two issues on appeal.  First, he claims that the district court erred by declining to order a mistrial after Rosa provided testimony implicating him in criminal acts that were beyond the scope of the conspiracy.  Second, he contends that the district court erroneously relied on his two prior drug convictions to impose an enhanced sentence under 21 U.S.C. § 841(b)(1)(A) because the prior convictions comprised conduct that was part of the instant conspiracy offense.

### A. Mistrial

De Jesus identifies three points in Rosa's testimony where Rosa improperly implicated him in criminal conduct that was outside of the conspiracy.  First, Rosa testified about his own involvement in a 1990 murder.  Defense counsel objected that Rosa implicated De Jesus in the murder by gesturing toward De Jesus when discussing the crime.  The district court responded by instructing Rosa to confine his answers to his own criminal conduct, but

defense counsel, not satisfied, moved for a mistrial. The court denied the motion, noting that it "did not see a gesture as dramatic as the one described," and that it was not as "clear or unambiguous [as defense counsel] may have suggested."

Second, Rosa testified that De Jesus worked packaging drugs. Rosa then stated, "In 1991 he was in prison."[1] Defense counsel objected, and the district court struck the comment. Finally, Rosa testified about his last drug transaction with De Jesus. Rosa stated that he had asked De Jesus to help him obtain drugs while he (Rosa) was in prison. Defense counsel objected to this testimony because this act was outside the scope of the conspiracy and requested a mistrial. The court again struck the testimony but declined to order a mistrial.[2]

De Jesus contends that, individually and combined, the effect of this improper testimony was so prejudicial that a mistrial was warranted. We review the district court's decision to

---

[1] There is some confusion in the record concerning whether this statement was made by Rosa or the prosecutor. De Jesus claims that the statement was made by Rosa and there is substantial record support for that view. We therefore have considered the claim in this light. But even if the prosecutor had made the statement, our conclusion would remain the same because, as discussed in the text, the district court's curative instructions sufficiently remedied any prejudice. See infra at 6-7.

[2] The court ruled that this testimony concerned an act that was within the scope of the conspiracy and would normally be admissible. But, because the government had filed a pretrial notice representing that this evidence would not be introduced in its case-in-chief, the court struck the testimony.

-4-

deny a mistrial motion for an abuse of discretion.  See United States v. Bradshaw, 281 F.3d 278, 284 (1st Cir. 2002).  A mistrial is a last resort that is only ordered if the demonstrated harm cannot be cured by less drastic means.  See United States v. Rullan-Rivera, 60 F.3d 16, 18 (1st Cir. 1995).

De Jesus focuses substantial attention on Rosa's "gesture" supposedly implicating him in a 1990 murder.  Testimony clearly implicating De Jesus in a murder outside of the charged conspiracy could be thought to have caused substantial prejudice.  The difficulty with this argument, however, is that the district court found that Rosa's gesture was neither as "dramatic" nor "unambiguous" as De Jesus suggests.  "The trial court has a superior point of vantage" and "it is only rarely--and in extremely compelling circumstances--that an appellate panel, informed by a cold record, will venture to reverse a trial judge's on-the-spot decision."  United States v. Freeman, 208 F.3d 332, 339 (1st Cir. 2000) (internal citations and quotations omitted).  Neither De Jesus's brief nor our own review of the record provides a basis for disregarding the district court's view of events and its conclusion that De Jesus was not substantially prejudiced by the incident.  See United States v. Pierro, 32 F.3d 611, 617 (1st Cir. 1994) ("[B]attles over the need for a mistrial most often will be won or lost in the district court").

For Rosa's two inadmissible comments, the district court provided prompt and forceful curative instructions. Immediately after Rosa's comment, "He was in prison in 1991," the court told the jury "to disregard the answer." Similarly, just after Rosa described De Jesus arranging to bring him drugs in prison, the court instructed, "Jurors, the witness's evidence from the last few questions concerning what he described as a transaction when he was in prison, all that evidence is stricken, and you will disregard it in your decision in this case." Also as part of its final instructions, the district court reminded the jurors to disregard stricken testimony:

> There was at least one and maybe several occasions on which an answer or a portion of an answer may have been given by a witness, and it was excluded from the evidence. You may recall that I did that. Evidence that I ordered to be stricken, you are to disregard and put out of your minds. It is not part of your consideration and may not be the subject of your discussion in the jury room.

Within wide margins, the prejudice caused by improper testimony can be addressed by providing appropriate curative instructions similar to those supplied here. See United States v. Sepúlveda, 15 F.3d 1161, 1184 (1st Cir. 1993). This rule is a corollary of the presumption that "juries follow instructions" unless there is "a sufficient showing that the offending testimony reasonably could not have been ignored and that serious prejudice

likely resulted." United States v. Gonzalez-Vazquez, 219 F.3d 37, 48 (1st Cir. 2000) (quotations omitted). De Jesus has not made this showing. The statement, "He was in prison," provided the jury with little detail, and it is not altogether clear that it referred to De Jesus, as Rosa blurted out the statement when there was no question pending.

Further, Rosa's testimony concerning the later transaction in which De Jesus brought drugs to Rosa in prison, also excluded by the court with a curative instruction, constituted additional evidence concerning De Jesus's work in furthering the conspiracy. See Bradshaw, 281 F.3d at 285 (affirming denial of motion for mistrial where inadmissible evidence was largely cumulative).

Finally, the strong proof of De Jesus's guilt militates against disturbing the district court's decision against declaring a mistrial. See United States v. DiSanto, 86 F.3d 1238, 1249 (1st Cir. 1996) (affirming denial of mistrial motion because evidence was strong); United States v. Belardo-Quiñones, 71 F.3d 941, 945 (1st Cir. 1995) (similar); United States v. Bello-Pérez, 977 F.2d 664, 672 (1st Cir. 1992) (similar). The government presented testimony from Rosa and his sister chronicling De Jesus's involvement in the conspiracy, an audio tape recording of De Jesus arranging a drug transaction and discussing a debt that one of the co-conspirators owed Rosa, and another tape recording of two co-conspirators discussing that De Jesus was no longer going to work for Rosa. De

-7-

Jesus's entire case consisted of calling Rosa to question his credibility. In short, this was not a close case. For these reasons, the district court's denial of De Jesus's motion for a mistrial was not an abuse of discretion.

### B. Sentencing

The district court sentenced De Jesus to a life sentence pursuant to the sentencing enhancement provisions of 21 U.S.C. § 841(b)(1)(A). In relevant part, this section provides that if a person is convicted of conspiring to possess in excess of a certain amount of controlled substance with the intent to distribute "after two or more prior convictions for felony drug offenses have become final, such person shall be sentenced to a mandatory term of life imprisonment without release." 21 U.S.C. § 841(b)(1)(A). De Jesus was convicted in Puerto Rico Superior Court of possessing cocaine in January 1991 and of possessing marijuana with the intent to distribute in November 1991. Both crimes occurred in Ponce and there is no dispute that they constitute felonies under Puerto Rico law.

De Jesus claims that these prior convictions should not count for purposes of applying the sentencing enhancement under 21 U.S.C. § 841(b)(1)(A). He argues that, because the prior convictions occurred during the time period and in the geographic location of the conspiracy charged in this case, the prior convictions represent "the same criminal conduct" as the conspiracy

conviction and consequently "should not count toward the enhancement."

De Jesus makes this argument by asserting that, under the Sentencing Guidelines, all three convictions (the two prior convictions and the conspiracy conviction) would be grouped togther as related cases pursuant to U.S.S.G. § 4A1.2 and therefore should not count as separate convictions for purposes of applying 21 U.S.C. § 841(b)(1)(A). This argument misconstrues the purpose of the Sentencing Guidelines. The Guidelines focus on the length and nature of the sentence, not the fact of conviction. Whether prior convictions count for purposes of 21 U.S.C. § 841(b)(1)(A) is a matter of statutory construction, not Guideline application. See United States v. Blackwood, 913 F.2d 139, 145 n.4 (4th Cir. 1990); see also United States v. Maxey, 989 F.2d 303, 307-08 (9th Cir. 1993) (rejecting similar argument). Indeed, the Guidelines specifically provide that statutorily required minimum sentences must be applied in lieu of the Guideline range if the statutory minimum is longer. See U.S.S.G. § 5G1.1.

But that the Guidelines do not provide the analytical vehicle for resolving De Jesus's argument does not end the matter. "Prior felony drug convictions will be counted separately for purposes of 21 U.S.C. § 841(b) only when they represent distinct criminal episodes." United States v. Martinez-Medina, 279 F.3d 105, 123 (1st Cir. 2002) (citing United States v. Gillies, 851 F.2d 492,

497 (1st Cir. 1988)). De Jesus contends that his prior convictions do not represent "distinct criminal episodes" because they are part and parcel of his participation in the conspiracy. Circuit precedent forecloses this argument. See Martinez-Medina, 279 F.3d at 123.

> In Martinez-Medina, we stated that:
>
> An ongoing course of criminal conduct such as narcotics trafficking may involve many such criminal episodes, each a discrete occurrence. The fact that all are related, part of a series, or part of a continuous course of criminal dealing, does not necessarily render them a "single" criminal episode, particularly where the episodes occur over time. To so hold would insulate the very career criminals the statute is designed to reach--those continuously engaged in criminal conduct.

Id. (quoting Maxey, 989 F.2d at 307). Consequently, we held that the district court properly imposed a life sentence under 21 U.S.C. § 841(b)(1)(A) because the defendant's prior convictions, although part of one drug trafficking conspiracy, stemmed from several transactions, occurring several months apart. See id. So too here. De Jesus's prior convictions were for separate drug transactions that occurred eleven months apart. See id.; see also United States v. Gray, 152 F.3d 816, 821-22 (8th Cir. 1998) (stating that drug transactions occurring one-day apart which required separate planning and execution constitute distinct criminal episodes under 21 U.S.C. § 841(b)(1)(A)); United States v. Griffin, 109 F.3d 706, 708 (11th Cir. 1997) ("Two drug transactions occurring on different

days--albeit within the same week and in the same general location--constitute separate unrelated offenses for purposes of sentencing under 21 U.S.C. § 841(b)(1)(A)."). Accordingly, the district court correctly counted them as prior convictions for purposes of 21 U.S.C. § 841(b)(1)(A).[3]

**Affirmed**.

---

[3]De Jesus attempts to distinguish Martinez-Medina on the basis that the government presented evidence of marijuana trafficking in the instant case which was the same conduct underlying De Jesus's prior marijuana conviction. As explained in the text, Martinez-Medina holds that each conviction arising from a distinct criminal episode counts as a separate conviction for purposes of 21 U.S.C. § 841(b)(1)(A) even though this same conduct is within the scope of the conspiracy. See supra at 10. The dispositive point here is not that evidence of De Jesus distributing marijuana was presented at his conspiracy trial but rather that his prior cocaine conviction was a separate criminal episode from his prior marijuana conviction even though the conduct underlying both convictions was arguably part of the same conspiracy. As for any claim that the conspiracy comprised the same episode as either of the two prior convictions, the short answer is that the conviction in this case was for conspiring to distribute heroin and cocaine, an episode continuing well beyond either of the prior convictions for discrete episodes of possession and distribution.